UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARISOL H.,

        Plaintiff,

    v.                                        **DECISION AND ORDER**

                                                    23-CV-6708S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.    Plaintiff Marisol H.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her applications with the Social Security Administration on December 16, 2013. She initially alleged disability beginning May 1, 2013, due to lumbar degenerative disc disease, status post two back fusion surgeries; irritable bowel syndrome; polycystic ovary syndrome with history of fibroids; bilateral carpal tunnel syndrome; asthma; seizure disorder; gastroesophageal reflux disease; chronic neck pain; right rotator cuff tendonitis; bilateral hip trochanteric bursitis; hypertension; anorexia; obesity; and hiatal hernia. Plaintiff's applications were denied and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3. On November 17, 2015, ALJ Michael Devlin commenced an in-person hearing, at which Plaintiff (without representation) and a Vocational Expert appeared and testified. (R.[2] at 31-57, 568-94.) Plaintiff was 42 years old on the onset date with a GED and worked as a home daycare provider. (R. at 25, 521; see R. at 476.)

4. The ALJ considered the case *de novo* and, on March 9, 2016, issued a written decision denying Plaintiff's applications for benefits. (R. at 19, 515.) After the Appeals Council denied her request to review this decision, Plaintiff filed an action challenging the Commissioner's decision. (R. at 1, 527.) There, the parties stipulated to remand the matter for further proceedings. Judge Charles J. Siragusa approved this stipulation. Marisol H. v. Comm'r, No. 17-CV-6503, Docket No. 13 (Mar. 16, 2018). (R. at 561.)

5. On August 29, 2018, the Appeals Council vacated and remanded this case to update the medical record and for the ALJ to evaluate additional evidence submitted to the Appeals Council. (R. at 565-66.)

6. On remand, the ALJ conducted an in-person hearing on May 14, 2019, where Plaintiff (with counsel) and Vocational Expert Dawn Blythe appeared and testified. (R. at 484-511; see R. at 460.) On June 27, 2019, the ALJ rendered a decision again denying Plaintiff's claim for benefits. (R. at 460.) On November 28, 2023, the Appeals Council declined review. (R. at 360.)

7. Following the Appeals Council's decision, Plaintiff filed this current action challenging the Commissioner's final decision.[3] (Docket No. 1.)

---

[2] Citations to the underlying administrative record are designated as "R."

[3] The ALJ's June 27, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council declined review.

8.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 4, 8.) Plaintiff filed a response on May 10, 2024, stating that a Reply was unnecessary (Docket No. 9), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion will be denied, and Defendant's Motion will be granted.

9.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 26 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

10.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence

3

may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

11.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

12.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

4

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

13.   Although the claimant has the burden of proof at the first four steps, the Commissioner has the burden of proof at the fifth and final step.  See Yuckert, 482 U.S. at 146 n.5.  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); see also Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983).

14.   The ALJ analyzed Plaintiff's claim for benefits under the process set for above.  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of May 1, 2013.  (R. at 462.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  lumbar degenerative disc disease, status post two back fusion surgeries; irritable bowel syndrome; polycystic ovary syndrome with history of fibroids; bilateral carpal tunnel syndrome; asthma; and seizure disorder.  (R. at 463.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

15.   Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with exceptions.  The ALJ first found that Plaintiff could occasionally lift and/or carry as well as push and/or pull 10 pounds, frequently lift and/or

carry less than 10 pounds, stand and/or walk for up to 2 hours in 8-hour workday, and sit about 6 hours in 8-hour workday. Further, the ALJ found that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but could never climb ladders, ropes, and scaffolds, or work at unprotected heights or near moving machinery. The ALJ found that Plaintiff could frequently finger bilaterally. The ALJ also found that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. (R. at 466.)

16. At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work. (R. at 476.) At Step Five, the ALJ found that there exist jobs in significant numbers in the national economy that Plaintiff could perform. (Id.) The ALJ did so by posing hypotheticals to the Vocational Expert of a claimant like Plaintiff in her age, education, work experience, and RFC. The Expert answered that this hypothetical claimant could perform such representative occupations as document preparer, addresser, and charge account clerk. (R. at 476-77.) The ALJ thus found that Plaintiff was not disabled. (R. at 477.)

17. The RFC "is defined as 'what an individual can still do despite his or her limitations.'" Perkins v. Berryhill, No. 17-CV-6327-FPG, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018) (citing Desmond v. Astrue, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012)). To determine the RFC, the ALJ considers the claimant's physical and mental abilities, and symptomology that may interfere with work. Id.; see also 20 C.F.R. § 416.945(a)). The ALJ assess the RFC based on all relevant medical and other evidence of record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(3), 416.920(e), 416.945(a)(3).

18.     Pursuant to Social Security regulations governing applications filed before March 27, 2017, a medical opinion reflects "judgments about the nature and severity of [Plaintiff's] impairment(s) including . . . what [Plaintiff] still could do despite impairment(s), and [Plaintiff's] physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  The opinion of a treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence.  Taillon v. Comm'r, No. 17CV6812, 2019 WL 1396837, at *2 (W.D.N.Y. Mar. 28, 2019); see 20 C.F.R. §§ 404.1527, 416.927.  The ALJ must give good reasons for the weight given to a treating source opinion.  See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). When giving less than controlling weight to a treating physician's opinion, the ALJ must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion."  Id. at 33.  "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific.'"  Blakley v. Comm'r., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) (rescinded effective Mar. 27, 2017)).

19.     The ALJ's "conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022); see also Perales, 402 U.S. at 399.  Therefore, the ALJ's duty is "to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (emphasis added); Dougherty-Noteboom v. Berryhill, No. 17-CV-00243-HBS, 2018 WL 3866671, at *9 (W.D.N.Y. Aug. 15, 2018).  Where faced with conflicting medical evidence such as differing opinions, the Supreme Court in Perales held that "the trier of fact has the duty to

7

resolve that conflict." Perales, 402 U.S. at 399. "ALJ has the authority to select among conflicting opinions." Boltz v. Berryhill, No. 15-CV-00587-FPG, 2017 WL 999204, at *4 (W.D.N.Y. Mar. 15, 2017) (quoting 20 C.F.R. § 404.1527(c)).

20.     Plaintiff now argues that the ALJ found the RFC based on his lay interpretation of the medical evidence by giving only partial weight to the medical opinions in this case. For the reasons stated below, this Court disagrees and finds that the ALJ did not rest on his lay interpretation of the medical record in finding Plaintiff's RFC but made his assessment from Plaintiff's medical record, as well as her statements and activities of daily living.

21.     The ALJ's RFC determination must be supported by competent medical opinion and the ALJ is not free to form their own medical opinion based on raw medical evidence. Goble v. Colvin, No. 15-CV-6302 CJS, 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016). In the absence of a competent medical opinion, an ALJ generally is not qualified to assess a claimant's RFC "on the basis of bare medical findings." Perkins, 2018 WL 3372964, at *3; see Jordan v. Berryhill, No. 1:17-CV-00509 (JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018) (the RFC must be tethered to medical evidence and claimant's own statements but not to the ALJ's lay assessment of bare medical findings); see also Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (a determination of the RFC without a medical advisor's assessment is not supported by substantial evidence).

22.     When the ALJ adopts only a portion of a medical opinion, the ALJ "must explain why he rejected the remaining portions." Mancuso-Rosner v. Comm'r, No. 17-CV-1019-MJR, 2019 WL 666944, at *4 (W.D.N.Y. Feb. 19, 2019) (citation for quotation

omitted). But an ALJ merely assigning less than significant weight to a medical opinion does not necessarily render their findings the product of lay assessment. Dougherty-Noteboom, 2018 WL 3866671, at *8-9. By assigning limited weight to that medical opinion, the ALJ incorporates that opinion into the RFC assessment. Id. at *9.

23. An ALJ has not rendered a mere lay assessment of the evidence when that finding is based on longitudinal evidence and a consultative examiner's opinion that supports the weight given to the treating source's opinion. Traci D. v. Commissioner, No. 20-CV-6594S, 2022 WL 860759, at *6 (W.D.N.Y. Mar. 23, 2022) (Skretny, J.). The ALJ thus may choose between properly submitted medical opinions. McBrayer v. Sec'y of Health and Human Servs., 712 F.2d 795, 799 (2d Cir. 1983) (citation omitted); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998). The ALJ is entitled to weight all the evidence to make the RFC consistent with the record, Matta, 508 F. App'x at 56, and resolve any conflicts in the record, see Perales, supra, 402 U.S. at 399. For "it is for the SSA, and not this court, to weigh the conflicting evidence in the record." Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

24. This Court thus defers to the ALJ's findings and will not reweigh the opinion evidence. See Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016). This Court thus finds that the ALJ here correctly relied upon examination findings from Plaintiff's treating sources showing that Plaintiff's conservative treatment, physical and aquatic therapy, and medication following her 2003 and 2005 lumbar surgeries eventually stabilized her low back pain. (R. at 303, 833, 926; see R. at 467, 475.)

25. Specifically, the ALJ here relied upon Plaintiff's statement made to Karl Michalko, M.D., her treating hand surgeon, as well as the doctor's opinion rendered on

9

May 21, 2014.  On May 11, 2014, Plaintiff slammed a car door on her right arm, and on May 21, 2014, she sought treatment from Dr. Michalko complaining of persistent numbness and tingling in her ring and small fingers.  Upon examining Plaintiff for that injury and noting her back fusion surgeries, Dr. Michalko observed that Plaintiff appeared healthy and was not in apparent distress.  Plaintiff told Dr. Michalko that she was able to work despite her injuries.  Dr. Michalko expected Plaintiff's pain from her accident would resolve itself on its own within two weeks after the accident but recommended nerve conduction studies to identify the cause for her carpal tunnel syndrome.  Nevertheless, Dr. Michalko opined that Plaintiff could work without restrictions.  Plaintiff did not complain of back pain or limitations during her examination despite Dr. Michalko noting her back fusion surgeries.  (R. at 713.)

      26.    The ALJ gave partial weight to Dr. Michalko's opinion for its consistency with the opinion of consultative examiner, Seema Khaneja, M.D., as well as the effects of Plaintiff's two back surgeries, Plaintiff's treatment that stabilized her condition, her concession that she could resume work despite her symptoms, and her activities of daily living.  (R. at 475; see R. at 301, 305, 306, 713, 717-18, 926.)

      27.    Dr. Khaneja examined Plaintiff on March 31, 2014, and diagnosed her with irritable bowel syndrome, polycystic ovary syndrome with history of fibroids, bilateral carpal tunnel syndrome, asthma with allergies, low back pain from degenerative disc disease status post two back fusion surgeries in 2003 and 2005, and chronic neck pain.  (R. at 302, 303, 306.)  The doctor opined that Plaintiff had mild limitations with respect to activities requiring prolonged walking and standing, repetitive bending, twisting, any heavy lifting, repetitive turning, or prolonged carrying of any heavy objects.  (R. at 306.)

28. The ALJ, however, only gave partial weight to Dr. Khaneja's opinion because it was partially consistent with medical evidence of record but rejected the doctor's mild limitation findings for sitting, standing, walking and mild manipulative limitations for its inconsistency with Plaintiff's status post two surgeries and her diagnosis of carpal tunnel syndrome. (R. at 474.)  The ALJ found Dr. Khaneja's opinion consistent with that of Dr. Michalko as well as Plaintiff's ability to work despite her symptoms. (R. at 471, 475.)  Furthermore, the ALJ found Dr. Khaneja's opinion partially consistent with Plaintiff's activities of daily living, including childcare, cooking, cleaning, doing laundry, and driving (R. at 303-04, 474-75), as well as her treatment record showing that her condition was stable with treatment. (R. at 475, 717-18, 926.)

29. From the cited medical evidence, the ALJ also noted Plaintiff's lumbar fusion surgeries and subsequent examinations by her treating physician, John Ginnetti, M.D., of the University of Rochester Medical Center, and physical therapists from Thompson Health. (R. at 469, 470; see R. at 314, 315, 822-25, 830, 832-37.)

30. Dr. Ginnetti examined Plaintiff on April 22, 2014, for bilateral hip pain, noting that she rated her pain as a 6 out of 10 on the pain threshold scale with her pain exacerbated by prolonged ambulation, climbing and descending stairs, and lying on her affected side. (R. at 314; see R. at 469.)  The doctor found that Plaintiff had intact sensation to light touch in all lumbar and sacral dermatomes of the legs, noting her antalgic gait and well-preserved range of motion in her hips and knees. (R. at 315; see R. at 469.)

31. Thompson Health physical therapists Emily Degan, PT, and Valerie McGrath, PT, also treated Plaintiff during the relative period. During the initial evaluation

on February 16, 2016, Plaintiff reported to PT Degan that her low back and right leg pain registered at 6 out of 10 on the pain threshold scale which reduced to 4 out of 10 with medication but rose to 9 out of 10 at its worst. Plaintiff said that physical therapy was helpful but was expensive. She also did not find the pain clinic helpful at improving her symptoms. (R. at 833; see also R. at 470[4].) PT Degan assessed whether Plaintiff's lumbar spine symptoms changed with various activities and found that Plaintiff had moderate limitations for sitting and lifting, and mild limitations for standing, concluding that Plaintiff had no restrictions. (R. at 822-23, 834, 836-37; see R. at 470.) PT Degan recommended aquatic therapy. (R. at 837; see R. at 470.)

       32. Before commencing the initial aquatic therapy session on February 26, 2016, Plaintiff reported to PT McGrath that her back pain was 5 out of 10 on the pain threshold scale, but her pain level increased to 6 out of 10 after rushing to physical therapy. (R. at 822; see R. at 470.) During her last aquatic therapy session on March 4, 2016, Plaintiff reported that she had low back pain at 4 out of 10 on the pain threshold scale. (R. at 824; see R. at 470.) On June 27, 2016, PT McGrath discharged Plaintiff from therapy for failure to attend. (R. at 832; see R. at 470.)

       33. On December 13, 2016, Plaintiff then saw treating physician Michael Herbowy, M.D., who found that medication stabilized her back pain, and that Plaintiff was not in any distress and ambulated normally. (R. at 734; see R. at 470-71.) On January 4, 2019, Dr. Herbowy examined Plaintiff who complained of low back pain and noted that Plaintiff's low back pain was well controlled with hydrocodone acetaminophen or Norco. Plaintiff had denied feeling any pain radiating down her legs or weakness in her upper or

---

[4] The ALJ mistakenly attributed and erroneously dated this treatment to Calvin Chiang, M.D., a referring physician to Thompson Health. R. at 833; cf. R. at 470.

12

lower extremities.  The doctor found that Plaintiff had a normal range of motion, exhibited no edema or tenderness of her lower spine, and had normal strength and tone in her lower extremities.  (R. at 923-26; see R. at 471.)

34.	Accordingly, this Court concludes that the ALJ did not make lay findings from raw medical evidence here and the RFC did not arise from the ALJ's lay assessment of the medical evidence.  Instead, in assessing the medical opinions the ALJ relied on the examination findings made by Plaintiff's treating sources as well as her own statements of her ability to work despite her symptoms.  (R. at 474-75, 713.)  Thus, the ALJ's RFC finding is not the product of lay assessment of the medical record.

35.	Therefore, this Court finds that the ALJ had sufficient evidence from Plaintiff's statements, her medical records, including stability noted therein, and opinions therein for his assessment of those opinions rather than his interpretation of raw medical findings.  (See R. at 475.)

36.	Having reviewed the ALJ's decision and considered Plaintiff's arguments, this Court finds that the ALJ appropriately considered the medical evidence and opinions in this matter to find the RFC that Plaintiff could perform work despite her limitations.  The ALJ thus did not render a lay assessment of the medical record in finding the RFC.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   February 12, 2025
         Buffalo, New York

                                          s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                      United States District Judge